E-FILED
Monday, 28 September, 2026 09:44:47 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| GARY MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 1:26-cv-01260 |
| SHARON HILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Gary Murray has filed a Complaint against Defendant Sharon Hill asserting a *per se* defamation claim. D. 1. Defendant has moved to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6). D. 4. For the reasons stated below, the [4] Motion is DENIED.

## I. BACKGROUND[1]

This defamation action stems from a series of text messages, sent by Defendant regarding Plaintiff. D 1 at 2. Plaintiff is a professional real estate developer from the Philadelphia area who serves as a manager and member of MTD Peoria, LLC ("MTD"). Defendant is the secretary of Village Grande at Ancient Oaks Homeowners Association ("HOA"). *Id.* Plaintiff is developing real estate within the HOA. These developments have been the subject of much litigation and discussion by the HOA Board of Directors. *Id.*

On May 12, 2025, Defendant sent a series of group text messages to certain HOA residents and members of the Board of Directors. *Id.* at 2–3. Defendant's messages included two links to an article published in the Philadelphia Enquirer titled "*Philly Real Estate Influencers Indicted on*

[1] The following factual allegations stem from the Complaint. *See* D. 1. At this stage, the Court accepts all well-pleaded allegations in the Complaint as true. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

*Federal Fraud Charges*." *Id.* at 3. The article discussed the federal indictments of Philadelphia-based real estate investors Gregory and Dannielle Parker for wire fraud and conspiracy to commit wire fraud charges. *Id.* The indictment accused the couple of "operating a Ponzi scheme" where the Parkers "scammed a string of 'victim investors' with bogus real estate investments" while "taking the money invested and...using [it] to fund their own lavish lifestyles." D. 1-3 at 1-2. Along with the article, Defendant texted "[s]ounds like someone we know" and "[y]ou could replace Parker for Murray." D. 1 at 3.

Plaintiff's Complaint brings a *per se* defamation claim against Defendant based on these messages. *Id.* at 2. Plaintiff claims that, despite having no proof of his engagement in criminal activity, Defendant made these false statements with malicious intent, which damaged his professional and personal reputation. *Id.* at 4. Defendant now seeks to dismiss this claim under Rule12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. D 4.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss is not to resolve the merits of a claim but instead tests the sufficiency of the allegations in a complaint. Courts must determine whether, after treating all well-pleaded allegations in the complaint as true and drawing factual inferences in the plaintiff's favor, the plaintiff has stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Kahn v. Walmart Inc.*, 107 F.4th 585, 593–94 (7th Cir. 2024). A claim has plausibility when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bilek v. Fed. Ins. Co.*,

8 F.4th 581, 586–87 (7th Cir. 2021). Making this plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

## III. JURISDICTION

Plaintiff alleges that this Court has authority over the present action under its diversity jurisdiction pursuant to 28 U.S.C. § 1332. A party seeking to invoke diversity jurisdiction has the burden of alleging: (1) complete diversity among the parties; and (2) that the amount in controversy exceeds $75,000. *Id.* at § 1332(a)(1); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89–90(2005). Here, Plaintiff alleges that he is a citizen of Pennsylvania, and Defendant is a citizen of Illinois. D. 1 at 1. Plaintiff further alleges damages in excess of $75,000. *Id.* Thus, the Court finds that the allegations in the Complaint sufficient allege diversity jurisdiction under 28 U.S.C. § 1332.

## IV. DISCUSSION

Under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Cogswell v. CitiFinancial Mortg. Co.*, 624 F.3d 395 (7th Cir. 2010). Under Illinois law, an actionable defamatory statement is one that " 'tends to cause harm to the reputation of another that it lowers that person in the eyes of the community, or deters third persons from associating with them.' " *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (quoting *Kolegas v. Heftel Broad Corp.*, 154 Ill.2d 1, 180, Ill.Dec. 307, 607 N.E.2d 201, 206 (1992)).[2] To state a claim

[2] The parties agree that Illinois substantive law governs Plaintiff's defamation claim, so it will be applied in this case. See D. 4 and D. 7; *see also Madison*, 539 F.3d at 652 (applying in a defamation case the substantive law of Illinois, "the state in which th[e] diversity case was filed"). Though Illinois courts impose a heightened pleading standard on certain theories of defamation, the Seventh Circuit has recognized that federal courts sitting in diversity are to adhere to Rule 8 of the Federal Civil Rules. *Muzikowski*, 322 F.3d at 926.

for defamation, a plaintiff must allege that: (1) defendant made a false state about the plaintiff; (2) there was an unprivileged publication of that defamatory statement to a third party; and (3) the publication caused plaintiff to suffer damages. *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008).

Damages may be presumed when, as here, a plaintiff brings a *per se* defamation claim.[3] This is because statement is considered *per se* defamation if it is "so obviously and materially harmful to the plaintiff that" injury to his or her reputation may be presumed. *Madison*, 539 F.3d at 653 (7th Cir. 2008) (citing *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 672 N.E.2d 1207, 1214 (1996)) (internal quotations omitted). There are five categories of statements that are considered *per se* defamatory in Illinois:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580, 852 N.E.2d 825, 839 (2006).

Here, Plaintiff's *per se* defamation claim alleges that Defendant's group text messages imply that he engages in fraudulent criminal activities and this has damaged him a professional and business capacity. D. 1. Defendant moves to dismiss the Complaint arguing that: (1) her statements are capable of innocent construction; (2) her statements did not accuse Plaintiff of committing a crime; (3) Plaintiff has not pleaded that her statements prejudiced him in his trade;

---

[3] The alternative is defamation *per quod* claim, under which damages are not presumed but must be affirmatively pled. This theory of defamation "requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity. *Madison*, 539 F.3d at 653 (quoting *Myers v. Levy*, 348 Ill.App.3d 906, 283 Ill.Dec. 851, 808 N.E.2d 1139, 1147 (2004)).

and (4) her statements are a nonactionable opinion. The Court will address each argument in turn. D. 4.

***A. Innocent Construction:***

Defendant argues that her statements do not constitute defamation because they are reasonably capable of an innocent, nondefamatory interpretation. Illinois courts apply the "innocent construction" rule to *per se* defamation claims. *Madison*, 539 F.3d at 653. Under this rule, an alleged *per se* defamatory statement is not actionable if it is reasonably capable of an innocent, nondefamatory construction. *Green v. Rogers*, 234 Ill. 2d 478, 499, 917 N.E.2d 450, 463 (2009). Whether a statement is reasonably susceptible to an innocent interpretation is a question of law. *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 667 N.E.2d 1296, 1302 (1996).

When determining whether a statement is capable of an innocent interpretation, courts examine the "statement in context, giving the words and implications their natural and obvious meaning." *Bryson,* 174 Ill. 2d at 90. If a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail. *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (citing *Muzikowski*, 322 F.3d at 925). This more stringent standard is applied in Illinois *per se* defamation actions due to the corresponding presumption of damages for such claims. presumption of damages. *Anderson*, 172 Ill.2d at 412. However, when a defendant clearly intended and unmistakably conveyed a defamatory meaning, courts should not "strain to see an inoffensive gloss on the statement." *Solaia Tech.*, 221 Ill. 2d at 580 (citing *Bryson*, 174 Ill.2d at 93).

Here, Defendant argues that the innocent construction rule applies because "[a] reasonable reader could interpret [her statements] as a subjective comparison between individuals who share certain professional and geographic characteristics." D. 4 at 3–4. She highlights that her additional

comments do not state what parts of the article resembled Plaintiff and the article contained other information unrelated to Parker's criminal conduct. *Id.* In rebuttal, Plaintiff asserts that such an interpretation is not reasonable and, when read in context, Defendant clearly intended to equate Plaintiff to the criminally fraudulent Parkers. D. 7 at 3.

In *D'Ambrosio v. Meta Platforms Inc.*, the Seventh Circuit recently affirmed dismissal of a *per se* defamation claim based on the sharing of a news article. 176 F.4th 928 (7th Cir. 2026) (applying Illinois law). There, the defendant posted a link to an article regarding another man's sexual assault arrest in a Facebook thread regarding the plaintiff. *Id*. at 933. The plaintiff then sued for defamation alleging that sharing the link implied he was the arrestee in the article. *Id.* The Seventh Circuit affirmed the district court's dismissal of plaintiff's claim under Rule 12(b)(6) holding that this comment was reasonably susceptible to innocent construction because the article was sent with no commentary or reference to the plaintiff and the article's title and teaser photo did not reference or show the plaintiff. *Id*. at 943. In doing so, the Court noted that "the names and faces of the two men do not match, [defendants] did not say they are the same person, and there is no indication in the complaint or exhibits that any other user responded to [defendants'] comment in any way, much less to suggest such an identification." *Id*. Therefore, the most reasonable construction was that the third-party was charged with a crime. *Id.*

Similar to *D'Ambrosio*, Defendant sent an article detailing criminal fraud allegations against third parties. However, critical to the innocent construction finding in *D'Ambrosio*, was the lack of commentary or reference to the plaintiff. Here, in contrast, Defendant explicitly tied the article to Plaintiff by stating "[s]ounds like someone we know" and "[y]ou could replace Parker for Murray." D. 1 at 3. Further, unlike *D'Ambrosio*, the audience would not know that the article was

Defendant still tries to leverage the innocent construction doctrine claiming that the article covers more than criminal conduct. Defendant notes that Plaintiff, who is also a Philadelphia-based real estate investor, shares geographical and professional traits with the Parkers. D 4 at 4. But the focus of the article is a Philadelphia real estate investor's criminal conduct. Expecting the Court to infer that Defendant shared the article to convey tangential personal similarities between its subject and the Plaintiff is to tempt it to "strain to see an inoffensive gloss on [a] statement." *See Huon*, 841 F.3d at 738.

The context surrounding the statements further reinforces this point. The group chat is comprised of HOA residents and board members, who are acutely aware of Plaintiff and his company due to ongoing disputes and litigation. In this context, a reasonable reader would interpret Defendant's comments as an assertion that Plaintiff, like the Parkers, is engaged in fraudulent activity. Because the Court need not "espouse a naïveté unwarranted under the circumstances," Defendant's contention that the language must be innocently construed as a matter of law is rejected. *Bryson,* 174 Ill.2d at 94.

### *B. Nonactionable Opinion:*

Defendant also claims dismissal is warranted because her statements were merely opinion. Expressions of opinion do not present actionable defamatory statements and are entitled to First Amendment protections. *Solaia*, 221 Ill. 2d at 581; *see also Moriarty v. Greene*, 315 Ill.App.3d 225, 233, 247 Ill.Dec. 675, 732 N.E.2d 730 (2000). Whether a statement is an opinion or assertion of fact is a question of law. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022). If an ordinary reader would conclude that the defendant is "expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at1129–30. Additionally, the

"vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023).

Illinois courts assess the totality of the circumstances when determining whether the statement constitutes an opinion. *Brennan v. Kadner*, 351 Ill. App. 3d 963, 731, 814 N.E.2d 951, 957 (2004). Guiding this determination are the following factors: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is factually verifiable; and (3) whether the literary or social context signals that [the statement] has factual content from the perspective of an ordinary reader. *Id*. at 958. This test is restrictive, as statements are only deemed opinions if it cannot be reasonably interpreted as stating an actual fact. *Solaia,* 221 Ill.2d at 581.

Defendant argues that her statements "reflect her personal reaction" and were "not objectively verifiable assertions of fact and lack the precision and verifiability required for an actionable factual assertion." D. 4 at 7. Though conceding that the statements were difficult to refute, Plaintiff maintains that they are not devoid of factual content as to whether he committed fraud which is a provable factual assertion. D. 7 at 6.

Recall, Defendant's *per se* defamatory statements were"[s]ounds like someone we know," and "[y]ou could replace Murray for Parker." D. 1 at 3. Beginning with the former, the statement is likely not precise enough to constitute a factual assertion. Defendant stated that the individual in the article reminded her of Plaintiff, but does not reference him by name, accuse him of any specific criminal conduct, or highlight any portion of the article. *See Trahanas*, 64 F.4th at 859. While the statement alludes to Plaintiff, this comment merely reflects Hill's subjective viewpoint of the article, rather than a verifiable assertion that Murray also committed fraud.

Defendant's second statement that "[y]ou could replace Murray for Parker," however, cannot reasonably be construed as an opinion. Defendant claims that the use of the word "could"

negates a factual assertion and relies on *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969, 814 N.E.2d 951, 958 (2004). D. 4 at 7. In *Brennan*, plaintiff sued defendant for an article regarding the local Election Board's investigation into his campaign contributions and expenditures. In that article, defendant wrote that, if the Election Board were unable to penalize plaintiff, a "source said that the election board could refer [plaintiff's] case to the U.S. attorney's office, claiming that he used the U.S. mail in perpetrating fraud." *Id*. at 966.

The *Brennan* court recognized that "[t]he very word 'could' inherently connotes a subjective judgment" but that alone was not dispositive. *Id.* at 969. It recognized that a defendant may not escape liability simply by "prefacing a statement with qualifying language" and that language only further informs the "literary, public, and social contexts" which serve as "a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion." *Id*. at 969–70. The *Brennan* court went on to note that the statement was made in a regularly featured column in which the journalist often expressed personal opinions, the statement was in regard to a matter of public concern and expressed defendant's speculation as to what could happen in the case that the mail fraud was not addressed by the Election Board. *Id*. at 970.

Here, at the early stages of the litigation, the Court is limited to the factual allegations in the Complaint. Unlike *Brennan*, those allegations do not provide the context necessary to find that no ordinary person would conclude Defendant's second statement was not asserting a factual contention. Illinois courts commonly recognize, "expressions of opinion may often imply an assertion of objective fact and, in such cases, would be considered actionable." *Dubinskey v. United Airlines Master Executive Council*, 303 Ill.App.3d 317, 324 (1999). Here, Defendant cannot seriously contend that her opinion did not imply that Plaintiff engages in criminal fraud.

The entirety of the article summarizes a long-running scheme orchestrated by the Parkers. Though true, Defendant does not specify where in the article you could "replace [Plaintiff] for Parker," the article itself is solely based on a real estate investor's ongoing fraud scheme. To state, you "could replace Murray for Parker" thus, conveys a precise assertion: Plaintiff is engaged in the same criminal conduct. That factual assertion – whether Plaintiff engages in real estate fraud – is verifiable.

Given that this is a highly restrictive test and the Court is limited to the facts within the Complaint, the Court finds that the second statement could reasonably be construed as conveying the factual assertion that Plaintiff is engaged in criminal fraud. Because Defendant's statements can be reasonably interpreted as implying a verifiable fact, dismissal is not warranted. *See United Airlines Master Executive Council*, 303 Ill.App.3d at 324.

***C. Allegation of Criminal Conduct:***

Defendant next moves to dismiss this action arguing that the statements do not expressly accuse Plaintiff of committing a crime and, thus, cannot support this theory of *per se* defamation. D. 4 at 4.

Under this "commission-of-a-crime category" of *per se* defamation, the statement alleged must impute "the commission of a crime…involving moral turpitude and punishable by death or imprisonment, not by fine." *Kapotas v. Better Gov't Assoc.*, 30 N.E.3d 572, 590 (Ill.App.Ct. 2015). The alleged crime must be an indictable one, though a defamation claim under this theory "need not meet the technical requirements necessary for an indictment." *Id*.

Defendant argues that the statements do not impute that Plaintiff committed a crime. She cites *Lansing v. Carroll* for the proposition that an actionable defamation claim in this context must be based on a "statement [which] directly or expressly accuse the plaintiff of committing a

specific crime." No. 11 CV 4153, 2015 WL 3962345, at *8 (N.D. Ill. June 29, 2015). Defendant then relies on this rule to urge dismissal, noting that none of Defendant's accompanying statements explicitly accuse Plaintiff of committing a crime. In response, Plaintiff alleges that this category of *per se* defamation includes statements which do not expressly accuse him of a crime.

A statement may fall into the "commission-of-a-crime category" where "[t]he natural effect of the words used, along with their context, conveyed the idea that the plaintiff [committed a crime.]" *Doe ex rel. Doe v. Cath. Diocese of Rockford*, 2015 IL App (2d) 140618, 38 N.E.3d 1239, 1250. For example, statements that claim an individual engaged in a series of acts which violate the law can still amount to *per se* defamation even absent the explicit conclusion that the individual engaged in criminal activity. *See id*. (citing *Bryson*, 174 Ill.2d at 90 (noting that calling plaintiff a "slut" conveyed that she was "unchaste" and thus, accused her of fornication) and *Hadley v. Doe*, 2015 IL 118000, 34 N.E.3d 549 (noting the Illinois Supreme Court "was untroubled that the alleged defamer did not expressly state that the plaintiff was a pedophile or had actually molested children.")).

Here, . Defendant states: "[y]ou could replace Murray for Parker," in the accompanying article. If one were to do so, the opening sentence of the article would read, in relevant part as follows: "[Murray]—who [has] long faced allegations of defrauding investors and ripping off those who paid for their mentoring services—[h]as been indicted on federal fraud charges." *See* D. 1-3 at 1. Taking the same approach with remaining statements that reference Parker fare no better. "[Murray was] operating a Ponzi scheme," "[b]ut some of the properties [Murray] sold to investors were condemned…and others were never owned by [Murray] in the first place." "In reality, [Murray was] using their client's investments to 'repay earlier victim investors and to enrich themselves,' the indictment alleges." *Id*. at 2–3.

Reading these statements under Defendant's instruction, they clearly amount to an allegation that Plaintiff was engaged in criminal conduct. This is far from the case Defendant's cite in hopes of dismissal. In *Lansing*, the Court refused to interpret the allegation that plaintiff was a crook as an allegation that he was engaged in criminal conduct. 2015 WL 3962345, at *8. To justify that holding, the court noted that "crook" has various meanings including that an individual is dishonest. *Id*. Because it was capable of an interpretation that did not impute criminal conduct, the court dismissed the *per se* defamation claim. *Id.* Here,there is no alternative way to interpret the above statements which imply Plaintiff was running a Ponzi scheme. *See Kumaran v. Brotman*, 247 Ill. App. 3d 216, 226, 617 N.E.2d 191, 199 (1993) (noting that statement that plaintiff was "scamming" the courts could be found to impute plaintiff had committed a crime). Thus, affording Plaintiff a favorable read of his allegations, the Court finds he has stated a *per se* defamation claim within the "commission-of-a-crime category."

***D. Prejudice in Trade:***

Defendant also moves to dismiss Plaintiff's defamation claim arguing that he fails to plead the alleged defamatory statements prejudiced him in his professional or business capacity. D. 4 at 6. In opposition, Plaintiff contends the defamatory statements "go to the heart of [his] professional integrity" given the comparison to individuals who ran a Ponzi scheme through their professional activities as real estate developers. D. 7 at 6.

In order to state a *per se* defamation claim in this context, a plaintiff must plead "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties" or "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064, ¶ 21, 16 N.E.3d 935, 940. "To be actionable per se in the profession-or-business category, typically a statement must 'relate[]

to job performance.' " *Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345 (N.D. Ill. June 29, 2015) (quoting *Madison*, 539 F.3d at 652–53. In contrast, statements which attack personal integrity and character are generally nonactionable as defamation per se, unless the targeted integrity pertained to their job performance. *Vicars-Duncan*, 16 N.E.3d at 943–44.

Defendant contends that Plaintiff's claim in this regard requires an "inferential leap" between the statements and the harm to Plaintiff's trade, profession, or business. D. 4 at 6. But any "leap" here is a small one and one that the Court is prepared to take given this early stage of litigation. Defendant equated Plaintiff to another member of his profession, who leveraged his employment to defraud real-estate investors. This is unlike the three cases Defendants provide in support of dismissal. Unlike *Lansing*, Defendant here is stating more than that Plaintiff was controlling in his professional relationships, rather she is implying he uses his position to perpetuate fraud. *See* 2015 WL 3962345, at *5. For similar reasons, *Anderson* is also of no help to Defendant. *See* D. 4 at 6 (citing 172 Ill.2d 399). In *Anderson*, the alleged defamatory statement was that plaintiff, a previous employee of defendant, "did not follow up on assignments" at work. *Id*. at 727. The court there interpreted that to mean plaintiff was not a good fit for that particular organization or position. Allegations that Plaintiff ran a Ponzi scheme are far more than alleging he was not a good cultural fit. Lastly, Defendant points to *Kapotas v. Better Gov't Association* in attempt to secure dismissal on this ground. D. 4 at 6 (citing 2015 IL App (1st) 140534, 30 N.E.3d 572). There, plaintiff was a medical doctor who sued many news outlets who reported that he falsely obtained sick pay from his employer despite the payments resulting from a clerical error. *Id*. at 579–80. The court rejected the theory that statements that the plaintiff was "double dipping" or somehow orchestrated the improper pay prejudiced the plaintiff in his role as a medical professional. *Id*. at 591.

But, unlike *Kapotas*, the defamatory statement against Plaintiff indicates that he cannot perform effectively as a real estate investor because, like Parker, he puts investors' funds to improper, personal uses. Such allegation implies that Plaintiff is incapable of protecting and investing his clients' funds as promised and thus, prejudices him in his profession as a real estate developer. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 12 607 N.E.2d 201, 207 (1992) (finding statements that cartoonist plaintiff's upcoming cartoon festival "was not for real" but plaintiff was "scamming" them prejudiced plaintiff in his business).

For the above reasons, the Court finds that the Complaint sufficiently alleges the defamatory statements prejudiced Plaintiff in his trade and dismissal on this ground is not warranted.

## V. CONCLUSION

For the above reasons, Defendant's [4] Motion to Dismiss is DENIED. Defendant must file an Answer to Plaintiff's [1] Complaint within twenty-one (21) days of entry of this Order.

Entered on September 28, 2026.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge